UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD E. LUBOW, JOSEPH J. BOPP, DAVID R. BENNETT, FRANK C. BENEVENTO, and JAMES J. LANDIS, <br><br>       Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, HILLARY R. CLINTON, as Secretary of State, acting by and through the FOREIGN SERVICE GRIEVANCE BOARD, and JAMES L. MILLETTE, as Deputy Assistant Secretary of State for Global Financial Services, <br><br>       Defendants. | CASE NO. 10-0510 (JDB) |

**PLAINTIFFS' RESPONSE/REPLY TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

Elliot H. Scherker
scherkere@gtlaw.com
Brigid F. Cech Samole
cechsamoleb@gtlaw.com
Greenberg Traurig, P.A.
1221 Brickell Avenue
Miami, FL 33131
Telephone:  305.579.0500
Facsimile:  305.579.0717

Joe R. Reeder (DC Bar No. 279786)
reederj@gtlaw.com
Danielle M. Diaz (DC Bar No. 982277)
diazd@gtlaw.com
Greenberg Traurig, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Telephone:  202.331.3125
Facsimile:  202.261.0124

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ......................................................................................... iii

ARGUMENT ........................................................................................................... 1

    I.      STANDARD OF REVIEW. ..................................................................... 1

    II.     STATE'S DETERMINATION THAT PLAINTIFFS WERE
           OVERPAID IS BASED ON AN ARBITRARY AND
           CAPRICIOUS INTERPRETATION OF GOVERNING
           STATUTORY AND REGULATORY PROVISIONS. ........................... 1

          A.    State's Construction of 5 U.S.C. § 5547 Is Arbitrary and
                Unreasonable. ................................................................................ 1

               1.    Section 5547 cannot be construed retroactively to
                     reduce already-paid overtime pay, based upon an
                     employee's change of assignment or designation
                     during a calendar year. ..................................................... 1

               2.    State's construction of OPM regulations is
                     untenable. .......................................................................... 3

               3.    State's erroneous construction of Section 5547 and
                     OPM regulations requires a remand. ................................. 3

    III.    STATE'S DENIAL OF PLAINTIFFS' WAIVER REQUEST IS
           ARBITRARY AND CAPRICIOUS. ..................................................... 7

          A.    Standard of Review. ..................................................................... 7

          B.    The FSGB Failed to Follow Its Regulations In Denying
                Waivers. ......................................................................................... 8

               1.    The FSGB failed to redress DAS Millette's
                     erroneous basis for denying waivers or to shift the
                       burden of proof to State to show that waivers
                       properly would have been denied. .................................... 8

          C.    FSGB Decision II Is Based On an Erroneous Application of
                the Waiver Regulations and Is Unsupported by Substantial
                Evidence. ...................................................................................... 10

i

**TABLE OF CONTENTS**
(Continued)

**Page**

1.      The FSGB's *ad hoc* creation of an "at fault" basis for denying waiver. ........................................................................10

2.      The FSGB's decision is unsupported by substantial evidence. ........................................................................11

CONCLUSION.........................................................................................................................13

# TABLE OF CITATIONS

**Page**

## Cases

*Am. Bar Ass'n v. F.T.C.*
    430 F.3d 457 (D.C. Cir. 2005) ......................................................................... 13

*Bennett v. Spear*
    520 U.S. 154 (1997) ........................................................................................ 6

*Broudy v. Mather*
    460 F.3d 106, 117 (D.C. Cir. 2006) ............................................................... 9

*Building & Constr. Trades Dep't, AFL-CIO v. Solis*
    600 F. Supp. 2d 25 (D.D.C. 2009) ............................................................ 6, 7

*Cal. Motor Transp. Co. v. Trucking Unlimited*
    44 U.S. 508 (1972) ......................................................................................... 9

*Chiang v. Kempthorne*
    503 F. Supp. 2d 343 (D.D. Cir. 2007) ............................................................ 6

*Christopher v. Harbury*
    536 U.S. 403 (2002) ....................................................................................... 9

*Citizens United v. Fed. Election Comm'n*
    --- U.S. ---, 130 S. Ct. 876 (2010) ................................................................ 9

*Corley v. U.S.*
    --- U.S. ---, 129 S. Ct. 1558 (2009) .............................................................. 1

*Darby v. Cisneros*
    509 U.S. 137 (1993) ....................................................................................... 7

*Doe v. Bin Laden*
    580 F. Supp. 2d 93 (D.D.C. 2008) ................................................................. 2

*DSE, Inc. v. U.S.*
    169 F.3d 21 (D.C. Cir. 1999) ......................................................................... 7

*Franklin v. Mass*
    505 U.S. 788 (1992) ....................................................................................... 6

*In re Sealed Case*
    356 F.3d 313 (D.C. Cir. 2004) ....................................................................... 9

## TABLE OF CITATIONS
(Continued)

**Page**

*Jackson v. Strayer College*
    941 F. Supp. 192 (D.D.C. 1996) ................................................................. 9

*Johnson v. Zerbst*
    304 U.S. 458 (1938) ................................................................. 9

*Kaseman v. Dist. of Columbia*
    444 F.3d 637 (D.C. Cir. 2006) ................................................................. 3

*Landstar Exp. An., Inc. v. Fed. Maritime Comm'n*
    569 F.3d 493 (D.C. Cir. 2009) ................................................................. 2

*Lipsman v. Sec'y of Army*
    335 F. Supp. 2d 48 (D.D.C. 2004) ................................................................. 2

*Nat'l Ass'n of Home Builders v. U.S. Army Corp. of Eng'rs*
    417 F.3d 1272 (D.C. Cir. 2005) ................................................................. 6

*Public Citizen v. U.S. Dep't of Justice*
    491 U.S. 440 (1989) ................................................................. 2

*Shea v. U.S.*
    45 F. Supp. 2d 54 (D.D.C. 1999) ................................................................. 10

*U.S. v. Cook*
    594 F.3d 883 (D.C. Cir. 2010) ................................................................. 2

*U.S. v. Olano*
    507 U.S. 725 (1993) ................................................................. 9

*Williams Gas Processing-Gulf Coast Co., L.P. v. F.E.R.C.*
    475 F.3d 319 (D.C. Cir. 2006) ................................................................. 12

### Statutes

5 U.S.C. § 5547(b) ................................................................. 2

5 U.S.C. § 5547(b)(2) ................................................................. 1

5 U.S.C. § 704 ................................................................. 6, 7

22 U.S.C. § 4410(a) ................................................................. 6

**TABLE OF CITATIONS**
(Continued)

**Page**

**Regulations**

22 C.F.R. § 34.18(b)(1)(ii) ................................................................. 10

22 C.F.R. § 34.18(b)(1)(iv) ................................................................. 9

22 C.F.R. § 34.18(b)(iv)(E) ................................................................. 9

22 C.F.R. § 905.1(c) ................................................................. 10

5 C.F.R. § 550.106(c) ................................................................. 4

# ARGUMENT

## I.      STANDARD OF REVIEW.

State and Plaintiffs agree on the governing standards of review.  Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment (Plaintiffs' Memorandum) at 18-19; Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment (State's Motion) at 14-17.

## II.     STATE'S DETERMINATION THAT PLAINTIFFS WERE OVERPAID IS BASED ON AN ARBITRARY AND CAPRICIOUS INTERPRETATION OF GOVERNING STATUTORY AND REGULATORY PROVISIONS.

### A.      State's Construction of 5 U.S.C. § 5547 Is Arbitrary and Unreasonable.

#### 1.      Section 5547 cannot be construed retroactively to reduce already-paid overtime pay, based upon an employee's change of assignment or designation during a calendar year.

State relies on the "plain language" of Section 5547(b), and specifically that statute's provision that "no employee … may be paid premium pay … if … the aggregate of the basic pay and premium pay … would, in any calendar year, exceed … the rate payable for level V of the Executive Schedule in effect at the end of such calendar year."  5 U.S.C. § 5547(b)(2).  State's Motion at 18.  According to State, "[s]hort of addressing [Plaintiffs] by name, the statute could not be clearer in governing their situation."  *Id.* at 19.  That is, State urges the Court to endorse an interpretation of Section 5547(b) under which Plaintiffs would all but have *exhausted* the purported retroactive cap on their overtime *upon their arrival in Iraq*.  Plaintiffs' Memorandum at 22-23.[1]  Such "absurdities of literalism … show that Congress could not have been writing in a literalistic frame of mind."  *Corley v. U.S.*, --- U.S. ---, 129 S. Ct. 1558, 1568 (2009) (footnote

---

[1]  As explained in Plaintiffs' Memorandum, Plaintiffs were *required* to work approximately 400 hours of overtime per year as law enforcement officers, in addition to any overtime demanded by State.  *Id.*  Under the retroactive application of the year – and $128,200 cap – rather than the premium-pay cap in effect from Plaintiffs' arrival in Iraq through July 2004, Plaintiffs would have all but exhausted the premium-pay allowance before working the first hour of *additional* overtime.  Needless to say, State *never* informed Plaintiffs that they should *not* work additional overtime or should refuse orders from their superiors to perform critical overtime missions.

omitted).  "Courts should not ascribe to Congress errors that it clearly did not intend," and should construe statutes so as to avoid a "peculiar result."  *Doe v. Bin Laden*, 580 F. Supp. 2d 93, 97 (D.D.C. 2008) (citation and internal quotations omitted).

To be sure, "the judiciary must restrict itself to the plain meaning of the statute unless the result reached is absurd or violates an easily perceived legislative purpose."  *Lipsman v. Sec'y of Army*, 335 F. Supp. 2d 48, 53 (D.D.C. 2004) (citation omitted).  When, however, "the literal reading of a statutory term would compel an odd result," the courts "must search for other evidence of congressional intent to lend the term its proper scope."  *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 454 (1989) (citation and quotations omitted).  "[I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."  *Id.* at 454-55 (citation omitted).  Thus, "[l]ooking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom."  *Id.* at 455.  As the D.C. Circuit has recognized, a "statutory outcome is absurd if it defies rationality" by creating "an outcome so contrary to perceived social values that Congress could not have intended it."  *Landstar Exp. An., Inc. v. Fed. Maritime Comm'n*, 569 F.3d 493, 498-99 (D.C. Cir. 2009) (citation and quotations omitted); *accord U.S. v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010).

State simply fails to address either this precedent or its impact on State's wooden application of Section 5547.  The more rational interpretation, of course, is the one offered by the American Foreign Service Association to State, *i.e.*, that the statutory reference to "the rate payable … in effect at the end of such calendar year," 5 U.S.C. § 5547(b), refers to *statutory changes*:

> The statute, as AFSA reads it, does not require the rate that applies to the employee's *position* at the end of the year be used, but rather is written to ensure that, if Congress changes either rate in the course of the year, that the rate enforced at the end of the year is used.  The statute does not appear to envision the situation where an employee moves back and forth between different caps over the course of the year.  Using [State's] interpretation, one can arrive at an

> unworkable situation where an employee spends nine or ten months working and earning premium pay in a domestic situation (with a cap at $130,305) and it was then was assigned to Iraq for the last two months of the year and finds that his or her cap has been reduced to $128,200.  In this situation an employee could well have exceeded the cap before even deploying to Iraq.

(Ex.16).  Because there is an entirely rational interpretation of Section 5547 that would *not* yield the absurd result urged by State, that rational construction should govern.  *E.g., Kaseman v. Dist. of Columbia*, 444 F.3d 637, 642 (D.C. Cir. 2006).

### 2.    State's construction of OPM regulations is untenable.

State's defense of the OPM regulations is, if anything, yet more wooden than State's statutory interpretation:

> After the opening of the U.S. Embassy, Plaintiffs received orders, effective June 27, 2004, by which they were permanently assigned to Embassy Baghdad.  The agency made the internal decision that they should be so assigned, and they were no longer on TDY assignment from Washington, D.C.  While Plaintiffs' positions had been the same, their assignment status was not.  The agency then determined that its regulations *required* that they receive premium pay which did not exceed the annual rate of pay … in effect on the last day of the calendar year – $128,200.  If Plaintiffs had not been permanently assigned to Iraq, but on TDY status from Washington, D.C., at the end of the calendar year, their premium pay cap would have been $130,305.   However, because of this change in their status to assignment in Baghdad, the premium pay cap necessarily was reduced, because locality pay does not apply to outside the United States.

State's Motion at 20-21.  Thus, in State's view, an utterly *meaningless* "internal decision" – one that merely slapped a different label on Plaintiffs' assignment while they continued to perform the same demanding and dangerous work in Iraq – retroactively reduced the pay cap for *the entire year*, such that, by the time Plaintiffs were permanently assigned to the Embassy, they inevitably would receive what State contends to be excessive overtime pay.   Merely to characterize State's position aptly demonstrates just how irrational and unfair it is.

### 3.    State's erroneous construction of Section 5547 and OPM regulations requires a remand.

Having vehemently defended an irrational literalistic reading of Section 5547 and the OPM regulations, State also tries to escape from the corner into which it rightfully deserves to be painted by virtue of State's August 19, 2005 retroactive waiver of the premium pay cap

limitation under the 2005 appropriations act.  As State argues, Plaintiffs "left Iraq in early 2005 and were reassigned to the United States."  State's Motion at 23-24.  State's argument would have the Court ignore both the 2005 appropriations act and State's retroactive waiver.

Section 1008 of the 2005 Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief specifically empowered federal agencies to waive the premium pay cap "[d]uring calendar year 2005," *not* for work *performed only* in calendar year 2005.  (Ex.21).  Plaintiffs' Memorandum at 11.  And State's August 19, 2005 retroactive waiver, by its own terms, applies to the premium-pay cap limitation "on the aggregate or basic pay and premium pay *payable* in calendar year 2005 for employees working in Iraq and Afghanistan. (Ex.25) (emphasis added).  That is, the premium pay cap waiver "will apply to all premium earnings *payable* in calendar year 2005," *including* "*work performed in pay period 25 of 2004* (pay date January 8, 2005).  *Id.* (emphasis added).  Thus, while State accurately notes that "any payments made beyond January 1, 2005 were applicable to calendar year 2005" (State's Motion at 24), State *ignores* that its retroactive waiver was, under the regulatory language as State interprets it, "in effect on the last day of the calendar year."  5 C.F.R. § 550.106(c).  State should not be allowed to defend against Plaintiffs' challenge to State's interpretation of the statute and rule as irrational by demanding that both be *literally* interpreted, and then also to escape the consequences of that literal interpretation by asserting that the statute and rule do not mean what State says they say.

Finally, State asserts that only Plaintiff Benevento is entitled to raise this argument in the first instance, because Plaintiffs Landis, Bennett, Bopp and Lubow, in compliance with DAS Millette's May 12, 2005 decision (Ex.17), appealed that decision to the DCA.  (Ex.18).  DAS Millette's May 12, 2005 ruling states, in pertinent part, that the *only* available review of State's overpayment ruling was through "external review procedures":

> [T]he regulations concerning external review procedures for salary offset are set forth at 22 C.F.R. 34.20.  The Department currently has a Memorandum of Understanding with the General Services Administration's Board of Contract Appeals for external hearings.  I am the hearing official for internal administrative

4

> reviews.   In either process, if the employee is contesting the existence and/or amount of the debt, the reviewing official will determine whether the employee was paid in excess of the premium pay cap … and if so, by how much….
>
> A claim challenging the Government's collection of a debt by salary offset *may not be the subject of a grievance before the Foreign Service Grievance Board* because a specific statutory appeals process for such claims exists in the form of the external hearing procedure.

(Ex.17:2) (emphasis added).[2]

State thereafter requested BCA to hear the appeals.   (Ex.18).   BCA assigned an administrative judge in response to that request.  (Ex.18).  BCA thereafter upheld DAS Millette's ruling on June 22, 2005, but ruled that State could not actually implement any recovery of the purported debts until State promulgated repayment schedule that complied with regulatory enactments.   (AR:82-89).   ("[a]t this time, … State cannot implement a salary offset to collect the debt because State has not established its proposed repayment schedule complies with its regulatory requirements regarding such schedules") (Plaintiffs' Memorandum at 12-18).   There then ensued the two rounds of administrative review on Plaintiffs' request for waiver of the purported overpayments.

In the language upon which State now seizes upon, the FSGB, noted its "concurrence with [BCA's] reasoning on this issue," but declined to address anew the underlying overpayment dispute in FSGB Decision I:

> Prior to filing the grievance underlying this appeal grievant elected to have the validity of the debt reviewed at a hearing by a non-State Department official.   The review was conducted by … the Board of Contract Appeals.  In determining the correct amount of the debt, [the BCA] reviewed the issue of which pay cap should be applied.   [Its] decision included a determination that the Department was correct in applying the $128,200 cap.
>
> We agree with the Department that grievant is barred from raising this issue.  He requested resolution of this matter under a separate authority and a final decision

---

[2]   The Department's attempt to confect a procedure by which the FSGB *could* review the overpayment dispute (State's Motion at 26 n.22) is thus misguided.   Although Plaintiff Benevento did not seek review before the BCA, State *adopted* the BCA ruling in rejecting Mr. Benevento's challenge to the overpayment ruling.   (FBAR:292-93).  So too did the FSGB. (FBAR:322).

was reached on the merits. The matter, therefore, may not be reopened in this grievant's appeal.

(AR:348). That the FSGB did not address the issues resolved by the BCA is of no moment here, because State rightly makes *no* argument that Plaintiffs' complaint is untimely under 22 U.S.C. § 4410(a) as to the BCA's ruling. The BCA's decision was not "final," within the meaning of 5 U.S.C. § 704, because, as noted above, the BCA barred State from implementing collection efforts until State's promulgated a rule-compliant repayment schedule. (AR:89). And that did not occur, at least with any finality, until State, following FSGB Decision II, issued its demands for immediate repayment on February 16, 2010. See Exhibits 59-63 to Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction. (DE:5-3:412-21).

Under 5 U.S.C. § 704, this Court has jurisdiction to review "final agency action for which there is no other adequate remedy in a court." There are two requirements for an agency action "final": (i) "the action must mark the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature"; and (ii) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *accord Nat'l Ass'n of Home Builders v. U.S. Army Corp. of Eng'rs*, 417 F.3d 1272, 1278 (D.C. Cir. 2005). That is, "an action is final if … it is definitive and has a direct and immediate … effect on a day-to-day business of the party challenging it, or if … it imposes an obligation, denies a right or fixes some legal relationship. *Nat'l Ass'n of Home Builders*, 417 F.3d at 1278 (citations and internal quotations omitted); *accord Chiang v. Kempthorne*, 503 F. Supp. 2d 343, 350 (D.D. Cir. 2007). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly effect the parties." *Building & Constr. Trades Dep't, AFL-CIO v. Solis*, 600 F. Supp. 2d 25, 35 (D.D.C. 2009) (quoting *Franklin v. Mass*, 505 U.S. 788, 797 (1992)).

Here, the BCA's decision itself established that State could not then collect monies from Plaintiffs and, once Plaintiffs initiated the waiver process, State itself agreed to interim relief,

pursuant to which all collection efforts were stayed pending the two rounds of FSGB proceedings. (AR:7). Indeed, had Plaintiffs not prevailed in the waiver proceedings, the BCA's decision would be moot, because no practical relief could be granted on judicial review.

Section 704 provides that, "[e]xcept as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for declaratory order, for any form of reconsideration, or, unless the agency requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority." 5 U.S.C. § 704. This provision "explicitly requires exhaustion of all inter-agency appeals mandated either by statue or agency rule." *Darby v. Cisneros*, 509 U.S. 137, 147 (1993); *accord DSE, Inc. v. U.S.*, 169 F.3d 21, 26-27 (D.C. Cir. 1999). The pendency of the waiver of proceedings, through which a repayment plan, if any, would be finalized, combined with State's stay of collection during the administrative proceedings, satisfies the *Darby* standard, such that the BCA's decision was not reviewable under the APA until completion of the waiver-request proceedings, which occurred only upon the issuance of FSGB Decision II and State's ensuing demand for payment." *Building & Constr. Trades*, 600 F. Supp. 2d at 36-37 (agency action is not "final" under Section 704 until plaintiffs suffer "actual, concrete injury") (quoting *Darby*, 509 U.S. at 144).

*All* Plaintiffs thus are entitled to challenge the BCA's ruling and State's determination that Plaintiffs must repay purportedly excessive overtime pay. State cannot avoid the consequences of its August 19, 2005 retroactive waiver which, even under State's interpretation of the governing statute and rule, retroactively raises the pay cap at the end of calendar year 2004, such that *no* overpayment ever existed in the first instance.

## III.   STATE'S DENIAL OF PLAINTIFFS' WAIVER REQUEST IS ARBITRARY AND CAPRICIOUS.

### A.   Standard of Review.

The parties agree on the governing standard of review. Plaintiffs' Memorandum at 26-27; State's Motion at 33-34.

7

**B.     The FSGB Failed to Follow Its Regulations In Denying Waivers.**

     **1.     The FSGB failed to redress DAS Millette's erroneous basis for denying waivers or to shift the burden of proof to State to show that waivers properly would have been denied.**

        **a.     DAS Millette's erroneous decision.**

State simply repeats DAS Millette's flawed justification for denying waivers.  State's Motion at 27-28 ("[h]aving over thirty employees in the same position as Plaintiffs pay back the debt while waiving Plaintiffs' debt 'would result in unfair gain'").[3]  According to State, "whether or not these other individuals availed themselves of administrative remedies does not bear upon whether they paid back their debts or not" (State's Motion at 27), which is correct – but also of no moment.  The critical point, which State refuses to address, is that what DAS Millette ruled, and what State is now arguing to this Court, is that Plaintiffs should not be allowed to seek waivers in the first instance, because *others* chose not to challenge DAS Millette's erroneous application of the governing regulations.

Carried to its logical extent, this argument would mean that government employees can be barred from seeking administrative remedies *and* judicial review if any *other* similarly mistreated government employee chose for the reasons entirely unknown, not to do so.  As now argued by State, Plaintiffs are to be denied access to this Court for fair administrative review of the waiver decision, based *solely* on the existence of other State employees' who did not undertake to question DAS Millette's rulings.  This would be nothing less than denying Plaintiffs their constitutionally guaranteed right of access to the courts, *e.g.*, *Christopher v. Harbury*, 536

---

[3]   State tortuously argues that the mere existence of unnamed State employees whom it alleges acceded to DAS Millette's demands supports denying waivers to Plaintiffs. But State provides the Court no facts from which to evaluate whether there is any evidentiary support for DAS Millette's conclusory statement, as to any such employee's pay status, or any alleged overpayment, or whether any other employee had a legitimate ground to seek waivers. Apart from the absence of any supporting facts, however, the notion that, in any context, the existence of victims who yielded without protest to unjust treatment or demands, should somehow support the proposition that other victims--victims who choose legitimacy to protest, should suffer a similar fate, is in a word, ludicrous. Whether a silent victim suffered slavery, or a holocaust, or was merely consumer who did not pursue a warranty, no court should ever countenance such an argument.

U.S. 403, 415 (2002), because "[t]he right not only protects the ability to get into court, but also ensures that such access be adequate, effective and meaningful." *Broudy v. Mather*, 460 F.3d 106, 117 (D.C. Cir. 2006) (citation omitted).[4]

Plaintiffs have not waived their right to seek review, because "[w]aiver is the intentional relinquishment or abandonment of a known right" by the holder of that right. *U.S. v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).   A waiver "extinguishes an error … because the [holder of the right] has knowingly and *personally* given up the waived right." *In re Sealed Case*, 356 F.3d 313, 317 (D.C. Cir. 2004) (emphasis added). Here, State urges a ruling that Plaintiffs cannot seek a relief from State from collection of the alleged overpayments because *others* exist who waived such right to challenge an inaccurate application of governing regulations.   Were this the law, apart form the resulting injustice, the mischief that would ensue is unimaginable.

State concedes, albeit obliquely, that DAS Millette's waiver ruling failed to address the unconscionability factor as set forth in 22 C.F.R. § 34.18(b)(iv)(E), *i.e.*, the factor upon which Plaintiffs actually relied in seeking a waiver.   Plaintiffs' Memorandum at 29; State's Motion at 28-30.   Although State insists that the question is whether DAS Millette was "required to specifically discuss each factor in 22 C.F.R. § 34.18(b)(1)(iv) in his decision letter" (State's Motion at 30), the *actual* question is whether there is the requisite "rational connection" between the single fact found in DAS Millette's letter – the existence of other State employees who did not challenge DAS Millette's rulings – and DAS Millette's rejection of Plaintiffs' waiver request.   Plaintiffs' Memorandum at 29.

### b.   The FSGB's erroneous decision to uphold DAS Millette's denial of waivers.

State's first argues that DAS Millette committed *no* procedural error, *i.e.*, the same

---

[4]   The right to petition administrative agencies is also protected by the First Amendment's guarantee of redress. *E.g.*, *Citizens United v. Fed. Election Comm'n*, --- U.S. ---, 130 S. Ct. 876, 907 (2010); *Cal. Motor Transp. Co. v. Trucking Unlimited*, 44 U.S. 508, 510 (1972); *Jackson v. Strayer College*, 941 F. Supp. 192, 196 (D.D.C. 1996).

argument addressed above.  State's Motion at 30-32.  Further, State attempts to have this Court

usurp FSGB's role by determining that FSGB "would have taken the same action" (State's

Motion at 32-33).  22 C.F.R. § 905.1(c), required *the FSGB* to impose on State the burden "to

establish, by a preponderance of the evidence," that State "would have taken the same action had

the procedural error not occurred."  Ironically, State enthusiastically embraces a narrow review

standard before this Court (State's Motion at 14-16), while *also* asking the Court to step into the

agency's shoes, to decide, had FSGB followed the law and shifted the burden to State, whether

the FSGB would, in turn, have determined that DAS Millette's decision would lawfully have

been the same, absent his erroneous rulings.  That, of course, exceeds any pretense even as to

proper judicial purview:  once deciding that the FSGB failed properly to shift the burden to State,

the Court should remand for further FSGB proceedings.  *Shea v. U.S.*, 45 F. Supp. 2d 54, 60

(D.D.C. 1999).  Plaintiffs' Memorandum at 30-31.

> **C.**     **FSGB Decision II Is Based On an Erroneous Application of the Waiver Regulations and Is Unsupported by Substantial Evidence.**
>
> **1.**     **The FSGB's *ad hoc* creation of an "at fault" basis for denying waiver.**

State attempts to rewrite FSGB Decision II, asserting that "[n]owhere in this decision did

the FSGB find that [Plaintiffs] were 'at fault.'"  State's Motion at 35.  While the FSGB

recognized its ruling in FSGB Decision I that Plaintiffs "were not at fault in accepting or failing

to prevent excess premium payments in 2004," the FSGB ruled that Plaintiffs "had reasonably

timely notice that payments were or may have been erroneous," even if Plaintiffs were "not 'at

fault.'"  (AR:413).  That is, although State, in a purely technical sense, is correct that the FSGB

did not invoke 22 C.F.R. § 34.18(b)(1)(ii) – because FSGB Decision I held that there was *no*

"indication of fault … on Plaintiffs' part" (AR:347, 413) – the FSGB indisputably ruled that

Plaintiffs were effectively "at fault" in somehow failing to act upon "reasonably timely notice

that payments were or may have been erroneous."  (AR:413).

That is the very definition of "fault" in the governing regulations.  22 C.F.R.

§ 34.18(b)(1)(ii) ("[f]ault is considered to exist if … the employee *knew or should have known*

… that an error existed [and] failed to take corrective action") (emphasis added).  Notably, State offers no response to Plaintiffs' position that the FSGB's use of "fault" justifies *denying* a waiver after FSGB Decision I, allowing Plaintiffs to seek a waiver in the first instance *because* Plaintiffs were not "at fault," fails to pass muster under precedent requiring *reasoned* explanations for administrative decisions.  Plaintiffs' Memorandum at 33-34.

### 2.      The FSGB's decision is unsupported by substantial evidence.

State reargues that "the FSGB did not attribute any fault to Plaintiffs," asserting that the FSGB "merely noted that Plaintiffs 'were put on notice' of the overpayments in November of 2004," such that "no fault was attributed to Plaintiffs at all."  State's Motion at 36-37.  This is an extraordinary construction of FSGB Decision II:  according to State, the FSGB attributed *no* fault to Plaintiffs in upholding DAS Millette's ruling, and FSGB reliance on the November 2004 e-mail was merely a passing reference.  If that is true, of course, FSGB Decision II is utterly without any rational basis, because FSGB *agreed* with Plaintiffs that "it seems unfair that they have to refund payments for overtime worked that they actually performed when they had no real option but to perform such work, and when those in similar positions in 2005 and subsequent years were paid."  (AR:411).  Certainly, no rational connection exists between that finding and a decision upholding DAS Millette's refusal to consider a waiver of overpayments, particularly when the November 2004 e-mail merely told Plaintiffs that State would contact them "with additional details concerning your specific situation as we finalize our review of the overtime payments" (Ex.11-L), and State *never* did so until after Plaintiffs had returned from Iraq.  Thus, the State is entirely *correct* in conceding that no evidence existed as to any attributable fault.  Plaintiffs' Memorandum at 36-37; State's Motion at 36-37.

But, if State's construction of FSGB Decision II is correct, then *no* articulated basis exists for that decision – except FSGB's recital of DAS Millette's decision that "granting a waiver to [Plaintiffs] would create an unfair gain for them vis-a-vis although similarly situated employees who repaid their excess premium pay for 2004 as requested."  (AR:413).  If that is the basis for

11

State's defense of the FSGB Decision II, the analysis set forth in Point III.B.1 would apply equally here, *i.e.*, Plaintiffs would be denied the right even to seek a waiver, despite State's present concession that Plaintiffs are *not* "at fault," because *other* State employees may have waived their right to challenge DAS Millette's erroneous determinations.  *See* Point III.B.1.a., *supra*.  The decision, however, will not bear the weight State seeks to place on it.

FSGB expressly held that "the Department's determination is in line with Comptroller General Decision which have discouraged the approval of waivers when the employee had reasonably prompt notice that payments were or may have been erroneous, even if the employee was not 'at fault,'" and cited, among other decisions, a Comptroller General Decision holding that, "when [the employee] received verbal notification of possible error, *he was under an obligation to set aside* the [wage differential] payments or possible repayment, *at least until being informed that the payments were not erroneous.*  (AR: 413).  From this, FSGB concluded that, "[w]hile our earlier decision found that [Plaintiffs] were not at fault in accepting of failing to prevent excess premium payments in 2004, we note that [Plaintiffs] were *put on notice in November of the year that the overpayment took place that they were approaching or had already exceeded the pay cap.*"  *Id.* (emphasis added).

State cannot rewrite FSGB Decision II to excise the FSGB's undeniable attempt to shift the onus to Plaintiffs because of the "purported notice" from the November 2004 e-mail – State's August 2004 Policy and State's express representation to Plaintiffs that "the onus is not and should not be on the employee" notwithstanding.  (AR:92; Ex.11-N).  Plaintiffs' Memorandum at 7-9, 36.  Nor can State defend FSGB's failure to account for these facts, either in an improper "at fault" determination or in weighing the purported equities.  Plaintiffs' Memorandum at 36-38.  "Arbitrary and capricious review demands evidence of reasoned decisionmaking at the agency level; agency rationales developed for the first time during litigation do not serve as adequate substitutes."  *Williams Gas Processing-Gulf Coast Co., L.P. v. F.E.R.C.*, 475 F.3d 319, 327 (D.C. Cir. 2006) (citation and internal quotations omitted).  Nor can this Court properly

"affirm an agency's actions based on the post hoc rationale of its litigating position."  *Am. Bar Ass'n v. F.T.C.*, 430 F.3d 457, 471 (D.C. Cir. 2005) (citation omitted).

**CONCLUSION**

Based on the foregoing, Plaintiffs request the Court to:  (i)  grant summary judgment in their favor, permanently enjoining Defendants from collecting overtime workpayments for what they inaccurately allege to be overpayments during 2004-05, together other relief as the Court deems to be just and appropriate; and (ii) deny State's Motion.

Respectfully submitted,

| | |
|---|---|
| Elliot H. Scherker | Joe R. Reeder (DC Bar No. 279786) |
| scherkere@gtlaw.com | reederj@gtlaw.com |
| Brigid F. Cech Samole | Danielle M. Diaz (DC Bar No. 982277) |
| cechsamoleb@gtlaw.com | diazd@gtlaw.com |
| Greenberg Traurig, P.A. | Greenberg Traurig, LLP |
| 1221 Brickell Avenue | 2101 L Street, NW, Suite 1000 |
| Miami, FL 33131 | Washington, DC 20037 |
| Telephone:  305.579.0500 | Telephone:  202.331.3125 |
| Facsimile:  305.579.0717 | Facsimile:  202.261.0124 |

By:   /s/ Joe R. Reeder_____

Dated:  June 28, 2010                                      Joe R. Reeder

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that copies of Plaintiffs' Response/Reply to Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment was electronically delivered via the Court's ECF System on June 28, 2010, to Marian I. Borum, Assistant United States Attorney for the District of Columbia, 501 Third Street, NW, Fourth Floor, Washington, DC 20001.

__/s/ Joe R. Reeder_____
                                               Joe R. Reeder