**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RICHARD LUBOW, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 10-0510 (JDB)** |
| ) | |
| **UNITED STATES DEPARTMENT OF STATE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Defendants, United States Department of State, *et al.*, ("Defendants"), respectfully file

this reply memorandum in response to Plaintiffs' Response/Reply to Defendants' Cross-Motion

for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment.  Plaintiffs

claim that Defendants improperly determined that they were overpaid and not entitled to a waiver

of the overpayments.  Plaintiffs' claims are without merit and should be dismissed.

## I.  ARGUMENT

**A.  The Department of State's Determination That Plaintiffs Were Overpaid Is**
**Based Upon a Proper Interpretation of 5 U.S.C. § 5547.**

1.  The Department of State Applied the Proper Interpretation of 5 U.S.C. § 5547.

Plaintiffs claim that the Department of State's "literal interpretation" of 5 U.S.C. § 5547

yields an absurd result which Congress "did not intend."  Plaintiffs' Response/Reply to

Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for

Summary Judgment ("Pltfs' Reply") at 1-2.  They state that "[t]he statute does not *appear to*

envision the situation where an employee moves back and forth between different caps over the

course of a year." *Id.* (citing Plaintiff's Motion for Summary Judgment ("Pltfs' MSJ"), Exhibit 16 (emphasis added)).  However, the Office of Personnel Management ("OPM") expressly envisioned this situation in the preamble to the final rule which was ratified by Congress.  OPM specifically addressed agency concerns that "[a] geographic move to an area with different pay rates can raise or lower an employee's aggregate basic pay and the end-of-year annual cap on premium pay." 69 Fed. Reg. 55941, p. 2 (Sept. 17, 2004).  OPM acknowledged that "[i]n some cases, an agency may have to recompute retroactively the amount of premium pay owed for one or more pay periods." *Id.*

In addition, the fact that the statute specifically states that premium pay may not exceed "the annual rate of pay for level V of the Executive Schedule *in effect on the last day of the calendar year*[,]" 5 U.S.C. § 5547(b)(1)(B), demonstrates an anticipation that the pay applicable to an employee may change during the course of a year.  This change can occur in various ways including an employee's being "employed in multiple locality pay areas over the course of a year[;]" "transfer[red] to a different agency[;]" or "move[d] from one . . . activity to another." 69 Fed. Reg. 55941 at 1-2.  It also can include Plaintiffs' situation in which their duty station and their pay area changed.  While Plaintiffs argue that the statute's application to their situation is absurd, they do not and cannot explain how, under OPM's regulations and its explanation of its regulations, a move from one duty station (with locality pay) to another (without locality pay) would not lower the cap and perhaps result in an agency's having to collect an overpayment.

2. OPM's Interpretation of the Statute and Its Regulations is Reasonable and the Department of State Applied That Reasonable Interpretation.

Plaintiffs state that "an utterly meaningless internal decision" to permanently assign

Plaintiffs to the newly-opened Embassy Baghdad unfairly reduced their pay cap.  Pltfs' Reply at

3.  Regardless of how Plaintiffs characterize the decisions of their employer, the agency charged

with issuing regulations to implement 5 U.S.C. § 5547 is OPM and, pursuant to *Chevron*, the

Court should defer to OPM's construction of 5 U.S.C. § 5547 so long as that construction is

reasonable.  *Chevron, USA, Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842-43

(1984).[1]  *See EPA v. Nat'l Crushed Stone Ass'n*, 449 U.S. 64, 83 (1980)("When construing

statutes, we show 'great deference to the interpretation given the statute by the officers or agency

charged with its administration.'")

　　　OPM's regulations are clear that the pay caps at the end of the year govern for the entire

calendar year.  5 C.F.R. §550.106(c).  The pay cap at the end of calendar year 2004 was $128,200

and, under OPM's regulation, Plaintiffs could only receive that amount.  Assuming *arguendo*

that the statute was silent with respect to Plaintiffs' situation, OPM made a policy choice to issue

broad regulations which covered Plaintiffs' situation.  Indeed, OPM acknowledged that "a

change in . . . end-of-year cap can change retroactively the date on which an employee reached

the annual premium pay cap."  69 Fed. Reg. 55941 at 2.  OPM noted that an agency that deferred

premium payment might be able to avoid an overpayment, thereby implying that if the agency did

---

[1] It is well settled that when courts review legal challenges to an agency's interpretation of a statute it administers, they must use the two-part test adopted by the Supreme Court in *Chevron,* 467 U.S. at 842-43.  Under the first part of this test, the court must determine whether Congress has directly spoken to the precise question at issue. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.*  Under second part of the test, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation being interpreted." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) (internal quotation and citations omitted).

not do so, in some instances the ultimate calculation of the cap would result in an overpayment. *Id.* OPM's interpretation of the statute was reasonable. *Chevron* requires a federal court to accept the agency's interpretation of the statute, even if the agency's reading differs from what the court believes is the best interpretation. *Id.* at 843. Therefore, this Court should accept OPM's interpretation of the statute and its regulations.

Moreover, on May 13, 2005, Congress passed Public Law 109-13, the DOD Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, ("2005 Premium Pay Cap Waiver").  This Act authorized "the head of an Executive Agency to waive the limitation, up to $200,000, established in 5 U.S.C. § 5547 on the aggregate of basic pay and premium pay *payable in calendar year 2005*."  AR:184 (emphasis added).   If Congress viewed the application of the premium pay cap in 2004 such that it could not change during the course of a calendar year, as Plaintiffs urge, there would have been no need for Congress to have enacted the 2005 Premium Pay Waiver and lifted the pay cap for 2005, and to have continued to do so in subsequent years.[2]

> 3.  The Implementation of the 2005 Premium Pay Cap Waiver Does Not Apply to Plaintiffs and Does Not Require a Remand.

The 2005 Premium Pay Cap Waiver came into effect on May 13, 2005, after Congress

---

[2]In their reply, Plaintiffs state that they "were required to work approximately 400 hours of overtime per year as law enforcement officers . . . ."  Pltfs' Reply at p. 1, n.1.  In so stating, Plaintiffs do not cite to the Administrative Record.  Rather, they cite to their own Motion for Summary Judgment and 5 U.S.C. §§ 5542(d) and 5545a.  However, these statutes do not indicate that individuals receiving Law Enforcement Availability Pay like Plaintiffs are *required* to work approximately 400 hours of overtime. On the contrary, they, *inter alia*, describe the computation of overtime rates and provide that criminal investigators shall receive additional pay to ensure their availability "to perform unscheduled duty based upon the needs of an agency."  5 U.S.C. § 5545a.

4

passed Public Law 109-13.  On August 19, 2005, the Department of State's Under Secretary for

Management exercised her authority and raised the premium pay cap.  *Id.*  Plaintiffs argue that,

although the premium pay cap was raised well after they departed Iraq, the 2005 pay cap should

apply to them because they were paid on January 8, 2005 for work performed in pay period 25 of

2004.  Pltfs' Reply at 4.  However, recomputing the overpayment such that all of Plaintiffs' 2004

salaries would be subject to the $200,000 2005 pay cap would be improper.  The cable describing

the Implementation of the 2005 Premium Pay Cap Waiver specifically states that, "for employees

who have served in Iraq or Afghanistan[,] the Department may recompute premium payments

that were payable before the law's enactment in May 11, 2005, but after January 1, 2005."

AR:186.  Therefore, recomputing Plaintiffs' entire salary for 2004 would be in direct

contravention of the language of the 2005 Premium Pay Cap Waiver as well as Congressional

intent in enacting Public Law 109-13.

    4.  Underline External Review by the Board of Contract Appeals.

Plaintiffs contend that Deputy Assistant Secretary ("DAS") James L. Millette's May 12,

2005 ruling stated that "the ***only*** available review of State's overpayment ruling was through

'external review procedures' . . . ."[3]  Pltfs' Reply at 4 (emphasis added).  This is incorrect.  DAS

Millette's May 12, 2005 *letter* to the American Foreign Service Association, to which Plaintiffs'

cite, indicated:

> [t]he regulations concerning external review procedures for salary offset are set
> forth in 22 C.F.R. 34.20 (2004).  The Department currently has a Memorandum of
> Understanding with the General Services Administration's Board of Contract
> Appeals for *external hearings*.  I am the hearing official for *internal*

---

[3]In making this argument, Plaintiffs cite to a document which is not a part of the
Administrative Record.

> *administrative reviews. In either process*, if the employee is contesting the
> existence and/or amount of the debt, the reviewing official will determine whether
> the employee was paid in excess of the premium pay cap established in 5 U.S.C. §
> 5547 and if so, by how much.

Pltfs' MSJ, Exhibit 17 (emphasis added).  DAS Millette clearly stated that there were external as

well as internal review procedures.[4]

Plaintiffs also state that the Department of "State thereafter requested [the Board of

Contract Appeals] to hear [Plaintiffs'] appeal."  Pltfs' Reply at 5.  However, Plaintiffs Landis,

Bopp, Bennett and Lubow each requested external hearings by the Board of Contract Appeals

("Board"), and the Department of State sent correspondence making the formal request to the

Board.  *See* AR:82 ("Mr. Landis asked State for a hearing regarding the existence and amount of

the debt, as allowed by 22 C.F.R. 34.19(a)(2004).  State asked the General Services Board of

Contract Appeals to select one of its judges to serve as the hearing official . . . .").

After the hearing, the Board of Contract Appeals Judge expressly rejected the four

Plaintiffs' argument that the cap was $130,305 rather than $128,200 in view of the plain statutory

language of 5 U.S.C. § 5547(b).  AR:88.  The judge also upheld the determination that Plaintiffs

Landis, Bennett, Bopp, and Lubow had been overpaid and owed a valid debt for the amount by

which their basic pay plus premium pay exceeded the amount of the applicable premium pay

limitation.  *See* AR:82.

Plaintiffs contend that "*All* Plaintiffs . . . are entitled to challenge the Board of Contract

Appeals ruling . . . ."  Pltfs' Reply at 7.  However, this, too, is incorrect.  Plaintiff Benevento

---

[4]To the extent Plaintiffs are claiming that they received inadequate notice of their
indebtedness, this claim fails as each Plaintiff received specific notice of the debt as well as his
right of review.  AR: 29-31.

never sought review of the validity of his debt by the Board of Contract Appeals.  Rather, he

requested and received an internal administrative review by the Department of State.  Therefore,

Plaintiff Benevento cannot now challenge the Board of Contract Appeals ruling.

> Moreover, pursuant to 22 U.S.C. § 4139:

> A grievant may not file a grievance with the [Foreign Service Grievance] Board if
> the grievant has formally requested, prior to filing a grievance, that the matter or
> matters which are the basis for the previous grievance be considered or resolved
> and relief be provided under another provision of law, regulations or Executive
> Order . . . and the matter has been carried to a final decision under such provision
> on its merits . . . .

Because, prior to filing the grievances underlying their appeal to the FSGB, Plaintiffs Landis,

Bennett, Bopp and Lubow "elected to have the validity of the debt reviewed at a hearing by a

non-State Department Official . . . the Board of Contract Appeals[,]" AR:348, these Plaintiffs

were barred from raising the issue before the FSGB.  Consequently, the FSGB did "not reach a

decision in this case on which is the correct premium pay cap . . . ."  *Id.*, n.2.  Therefore,

Plaintiffs Landis, Bennett, Bopp and Lubow cannot challenge the determination of the proper pay

cap here.

> In an attempt to create an avenue to challenge the Board of Contract Appeals' finding

regarding the correct pay cap, Plaintiffs argue that the Board of Contract Appeals holding was

not final, and could be reviewed under 5 U.S.C. § 704, because the Board barred the Department

of State from implementing collection procedures.

> Under 22 C.F.R. § 34.23(c), in order to collect the overpayments,

> the size of deductions cannot exceed fifteen percent of the disposable pay from
> which the deduction is made . . . and must bear a reasonable relation to the size of
> the debt and the employee's ability to pay.

The Board of Contract Appeals found that the Department of State could not begin collection

procedures, *by salary offset*, because

> [t]he material submitted did not allow the Board to determine whether the amount
> State propose[d] to deduct per pay period exceed[ed] fifteen percent of the
> diposable pay from which State propose[d] to make the deduction.

AR:89.  In making this determination, however, the Board of Contract Appeals did not indicate

that its decisions regarding the correct pay cap and the overpayment were not final.  Indeed, after

making these determinations, the Board specifically stated that the Department of State had

established the amount of the debt.  *Id.*

### B.  The Department of State's Denial of Plaintiffs' Waiver Requests Was Not Arbitrary or Capricious.

#### 1.  DAS Millette's Decision Was Not Erroneous.

Plaintiffs state that the Department of State has "argu[ed] . . . that Plaintiffs should not be

allowed to seek waivers in the first instance[] because others chose not to challenge DAS

Millette's . . . application of the governing regulations."  Pltfs' Reply at 8.  Defendants have

made no such argument.  On the contrary, Defendants clearly stated that "[w]hether or not . . .

other individuals availed themselves of administrative remedies does not bear upon whether they

paid back their debts or not.  Rather, having over thirty employees in the same position as

Plaintiffs pay back the debt while waiving Plaintiffs' debt 'would result in unfair gain' to

Plaintiffs[.]"[5]  Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs'

Motion for Summary Judgment (Defendants' Cross-Motion") at 27-28.  Whether failure to make

restitution would result in unfair gain to an employee is one of the factors in 22 C.F.R. § 34.18

---

[5]These thirty-plus employees made waiver requests, but DAS Millette denied their
requests.

(b)(1)(iv) which DAS Millette appropriately considered when determining if collection of the

claims against Plaintiffs would be against equity and good conscience and not in the best

interests of the United States.  *See* 22 C.F.R. §34.18(b)(1)(iv)(D).  Clearly, then, there is a

rational connection between the facts and the choice made by DAS Millette.  *See Motor Vehicle*

*Mfgr's Ass'n*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371

U.S. 156, 168 (1962)); *Olson v. Clinton*, 602 F.Supp.2d 93, 100 (D.D.C. 2009)("If the agency's

reasons and policy choices . . . conform to certain minimal standards of rationality . . . the

[agency decision] is reasonable and must be upheld.")(internal quotations and citations omitted).

Despite Plaintiffs' claims, Defendants' argument has nothing to do with "waiver of [a] right to

seek judicial review."  Pltfs' Reply at 9.  Instead, the argument directly addresses the equity of

requiring some individuals to pay the debt while excusing others from doing so.[6]

> ## 2.  DAS Millette's Not Specifically Addressing Each Factor of 22 C.F.R. §34.18(b)(1)(iv) in His Decision Was Not a Procedural Error.

Pursuant to 22 C.F.R. § 34.18(b)(1)(iv), an

> employee is *not automatically entitled to a waiver.*  Before a waiver can be
> granted, the deciding official must also determine that collection of the claim
> against an employee would be against equity and good conscience and not in the

---

[6]Plaintiffs complain that the Department of "State provides the Court no facts from which to evaluate whether there is any evidentiary support for DAS Millette's . . . statement" regarding other employees' who had paid their debts in full.  Pltfs' Reply at 8, n.3.  However, this case is before the court on a review of the administrative record.  As such, the Court does not resolve factual issues or duplicate agency fact-finding efforts, but instead functions as an appellate court addressing a legal issue.  *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996).  Therefore, the Court's review is limited to the administrative record that was before the FSGB at the time it made its decision.  *Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). On their second trip to the FSGB, Plaintiffs decided to rely upon the existing record; AR:398, accordingly, they had the opportunity to obtain discovery concerning the other employees, and did not do so.  They should not now be heard to complain that the factual record is lacking on this point.

best interests of the United States.  Factors to consider when determining if collection of a claim against an employee would be against equity and good conscience and not in the best interests of the United States include, but are not limited to:

>   (A) Whether collection of the claim would cause serious financial hardship to the employee from whom collection is sought;
>
>   (B) Whether, because of the erroneous payment, the employee either has relinquished a valuable right or changed positions for the worse, regardless of the employee's financial circumstances;
>
>   (C) The time elapsed between the erroneous payment and discovery of the error and notification of the employee;
>
>   (D) Whether failure to make restitution would result in unfair gain to the employee;
>
>   (E) Whether recovery of the claim would be unconscionable under the circumstances.

22 C.F.R. §34.18(b)(iv)(emphasis added).

Plaintiffs continue to argue that DAS Millette made a procedural error by not specifically addressing one of the five factors in 22 C.F.R. § 34.18(b)(1)(iv).  Plaintiffs make this argument, while completely ignoring the fact that Plaintiffs themselves failed to provide DAS Millette with any information which would allow him to address two other factors in the regulation.[7] Moreover, even after DAS Millette asked Plaintiffs to provide him with additional information on the factors to assist him in making his decision, Plaintiffs refused to do so.  Despite Plaintiffs' argument, DAS Millette's not specifically addressing factor (E), the unconscionability factor,

---

[7]As stated by the FSGB, Plaintiffs "provided no information with respect to financial hardship, nor did they specifically comment on the other factors outlined in the regulations." AR:411.

does not amount to a procedural error.[8]  As the District of Columbia Circuit has stated, the

administrative record need not include explicit discussion of every factor that is relevant to the

agency's decision so long as the bases for the agency's policy choices are otherwise clear from

the nature and context of the challenged action.  *See Domtar Maine Corp.*, 347 F.3d 304, 311-12

(D.C. Cir. 2003), *cert. denied*, 541 U.S. 1029 (2004).

Further, as stated by the Foreign Service Grievance Board ("FSGB"), DAS Millette's

denial letter "did address the equities of the waiver request."  AR:412.  DAS Millette specifically

stated that he "careful[ly] consider[ed] the factors in 22 C.F.R. §34.18(b)(1)(iv)," and, after such

consideration, he concluded "that it would not be 'against equity and good conscience' and

would be in the 'best interests of the United States' to recover the overpayment . . . ."  AR:360.

The FSGB correctly stated that "the only question at issue here is whether the Department abused

its discretion in denying grievants the waivers they requested for the year 2004 in the

circumstances of their cases."  *Id.*  The FSGB found that "the Department did not abuse its

discretion . . . ."[9]  AR:413.

Assuming *arguendo* that not discussing one factor did constitute a "procedural error," this

---

[8]Plaintiffs state that this was "the factor upon which Plaintiffs actually relied in seeking a waiver."  Pltfs' Reply at 9.  However, in response to DAS Millette's request for additional information to assist him in making his decision, Plaintiff's attorney "rel[ied] upon the record already developed" and referred to the 2005 Premium Pay Cap Waiver established by Congress in August of 2005, subsequent to Plaintiffs' departure from Iraq, stating "[o]bviously, the Agency decided to waive pay caps because it believed it equitable to do so."  AR:398.  Plaintiffs' attorney did not mention the unconscionability factor *per se*.  Rather, it was the FSGB which considered the attorney's statement to have addressed the factor of whether recovery would be unconscionable under the circumstances.  AR:411.

[9]Pursuant to 22 C.F.R. 34.18(b)(8), "[t]he burden is on the employee to demonstrate that the applicable waiver standard has been met[,]" and they are entitled to a waiver of their indebtedness.  Plaintiffs have failed to meet that burden.

would not conclude the analysis.  As the regulation states, the procedural error must

> be of such a nature that it may have been a substantial factor in an agency action .
> . . <u>and</u> the question is presented whether the agency would have taken the same
> action had the procedural error not occurred . . . .

22 C.F.R. § 905.1 (emphasis added).  Here, not specifically discussing that one factor was not a

substantial factor in the agency action.  DAS Millette clearly indicated that he "careful[ly]

consider[ed] all of the factors."  AR:360.  Moreover, not making specific reference to one factor

did not play a major role in his decision to deny the waiver requests because he found that a

review of the equities required that the waiver requests be denied.

      Plaintiffs have not attempted to substantively address the portion of the regulation

regarding "whether the agency would have taken the same action had the procedural error not

occurred." 22 C.F.R. § 905.1(c).  This is, undoubtedly, because it is clear that the agency would

have taken the same action.[10]  In his decision, DAS Millette stated that Plaintiffs' "failure to

make restitution would result in an unfair gain . . . ."  AR:360.  He concluded that "a waiver of

the salary overpayment [could not] be made under the provisions of 5 U.S.C. §5584."  *Id.*

Therefore, even if DAS Millette should have specifically referenced the unconscionability factor

in the decision, the Department still would have concluded that not requiring Plaintiffs to make

restitution would result in unfair gain to Plaintiffs, and denied Plaintiffs' requests for waivers.

---

[10]Plaintiffs contend that "State attempts to have this Court usurp FSGB's role by determining that FSGB 'would have taken the same action.'" Pltfs' Reply at 10.  However, the very language of DAS Millette's decision demonstrates that the same action would be taken.  In any event, the FSGB was not required to make this determination because, pursuant to 22 C.F.R. § 905.1, such a determination can only take place "where a grievant [has] establish[ed] that a procedural error [had] occurred which [was] of such a nature that it may have been a substantial factor in [the] agency['s] action . . . ."  Plaintiffs have not shown, and cannot show, that any procedural error occurred.

**C. The FSGB's January 2010 Decision Properly Applied the Regulations and Was Not Arbitrary, Capricious Nor an Abuse of Discretion.**

Plaintiffs assert that the FSGB attributed fault to them and placed "reliance" upon the November 24, 2004 e-mail in which they were notified that they were approaching or had already exceeded the pay cap.[11]  Both assertions are incorrect.

Nowhere in the FSGB's 2010 decision did it find that Plaintiffs were "at fault."  *See* 22 C.F.R. § 34.18(b)(ii), (iv).  In fact, the FSGB specifically stated that the Department of State's determination to deny the waiver requests was "in line with Comptroller General Decisions which have discouraged the approval of waivers when the employee had reasonably prompt notice that payments were or may have been erroneous, *even if the employee was __not at fault__.*"[12] AR:413 (emphasis added).  Moreover, pursuant to 22 C.F.R. § 34.18(b)(1)(ii), "[f]ault is considered to exist if . . . the employee knew or should have known . . . that an error existed [and] failed to take corrective action.  22 C.F.R. § 34.18(b)(1)(ii).  In neither its 2008 nor 2010 decision did the FSGB find that Plaintiffs failed to take corrective action.[13]

---

[11]As if to state that Plaintiffs were completely unaware of the overpayments, Plaintiffs state that the November 2004 e-mail "merely told Plaintiffs that State would contact them 'with additional details concerning your specific situation as we finalize or review of the overtime payments . . . .'" Pltfs' Reply at 11.  However, the next sentence in the e-mail was: "At that time we will provide information about *repayment* options, tax implications, etc."  AR:316 (emphasis added).  In addition, the e-mail made clear to Plaintiffs that the Department had "determined that [their] earnings applicable toward the 2004 annual premium pay cap ha[d] already or could shortly put [them] above the cap for the current pay year."  *Id.*  The e-mail also stated that their premium compensation could not exceed $128,000 and if payments were "made erroneously, the Department [was] obligated to seek collection of such overpayments."  *Id.*

[12]Although an individual may be determined to not be at fault, whether it would be equitable to require repayment remains a consideration.  *See* 22 C.F.R. § 34.18(b)(1)(iv).

[13]Plaintiffs complain because the FSGB parenthetically noted language from a Comptroller General decision which stated: "when [the employee] received verbal notification of

Plaintiffs contend that the FSGB's January 2010 decision was without rational basis because the FSGB "agreed with Plaintiffs that 'it seems unfair that they have to refund payments for overtime . . . .'" Pltfs' Reply at 11.  However, the FSGB also stated the following:

> the only question at issue here is whether the Department abused its discretion in denying grievants the waivers they requested for the year 2004 in the circumstances of their cases.  The burden is on the employees to make their showing.  Under the circumstances, we find that grievants did not show that the decision to deny a waiver was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

AR:412.

Plaintiffs also contend that the FSGB "shift[ed] the onus to [them] because of the 'purported notice' from the November 2004 e-mail . . . ." Pltfs' Reply at 12.  Plaintiffs are wrong.  As indicated *supra*, in neither its 2008 nor 2010 decision did the FSGB find that Plaintiffs failed to take corrective action after becoming aware of the overpayments.  The only burden placed upon Plaintiffs was to show that the Department's denial of the waivers was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  As the FSGB held, Plaintiffs failed to make that showing.  *See* AR: 412.  FSGB's decision is presumed to be valid and entitled to substantial deference.  Therefore, Defendants request that Plaintiffs' Motion for Summary Judgment be denied and Defendants' Cross-Motion for Summary Judgment be granted.

---

possible error, he was under an obligation to set aside the [wage differential] payments for possible repayment, at least until being informed that the payments were not erroneous." Pltfs' Reply at 12 (citing AR: 413).  However, nowhere in the FSGB's decision did it indicate that Plaintiffs were under an obligation to set aside overtime payments or take other action after receipt of the November 2004 e-mail.

## II.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully reiterate their request that this Court

deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for

Summary Judgment.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar # 447889
United States Attorney
for the District of Columbia


RUDOLPH CONTRERAS, D.C. Bar # 434122
Chief, Civil Division


By:  /s/ _____
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-6531
Marian.L.Borum@usdoj.gov

15

Of Counsel:

James H. Anderson
Attorney Adviser
Office of the Legal Adviser
U.S. Department of State
Global Financial Services
P.O. Box 150008
Charleston, SC 29415-5008

_____

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of July, 2010, the foregoing was served, via

the Court's ECF System, to counsel for Plaintiffs:

Elliott H. Scherker                              Joe R. Reeder
Brigid F. Cech Samole                            Danielle M. Diaz
Greenberg Traurig, P.A.                          Greenberg Traurig, P.A.
1221 Brickell Avenue                             2101 L Street, N.W., Suite 1000
Miami, Florida 33131                             Washington, D.C.  20037


                              /s/
                              MARIAN L. BORUM
                              Assistant United States Attorney

17