UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD LUBOW, et al.

    Plaintiffs,

        v.

UNITED STATES DEPARTMENT OF STATE, et al.

    Defendants.

Civil Action No. 10-0510 (JDB)

## MEMORANDUM OPINION & ORDER

Richard Lubow, Joseph Bopp, David Bennett, Frank Benevento and James Landis, each a current or retired member of the State Department's Bureau of Diplomatic Security, "deploy[ed] to Iraq [as Foreign Service Specialists] in support of State's attempt to establish a diplomatic presence in Iraq, after the fall of Saddam Hussein's regime." Pls.' Mem. in Supp. of Mot. for Summ. J. ("Pls.' Mem.") [Docket Entry 19], at 1. While deployed, plaintiffs were eligible for both basic pay -- compensation for a forty-hour work week -- and premium pay -- overtime, compensatory time off, and holiday premium pay. See, e.g., Administrative Record of Frank Benevento ("FBAR"), 67-68 (Explanation of Benefits).[1] At issue in this action are alleged salary overpayments made to plaintiffs for their work in Iraq in 2004.

Federal law establishes the aggregate amount of basic pay and premium pay an employee may receive. Under 5 U.S.C. § 5547(a), an employee's aggregate of basic pay plus premium pay

---

[1] The State Department has produced the administrative record in several volumes, including separate volumes for materials relating to each plaintiff, and a single, general volume for remaining materials. Many of the records in the various volumes are substantively identical and therefore, where appropriate, the Court has cited to only one of the volumes.

for any biweekly pay period cannot exceed the greater of "the maximum rate of basic pay payable for GS-15 (including any applicable locality-based comparability payment)" or "the rate payable for level V of the Executive Schedule." Because a particular employee's basic pay is consistent for each pay period, section 5547(a) establishes a cap on the amount of premium pay that an employee can earn. Nevertheless, where an agency determines that there is an emergency that "involves a direct threat to life or property," the agency may waive the biweekly pay cap and instead apply an annual cap on compensation. 5 U.S.C. § 5547(b)(1).[2] The State Department concluded that the war in Iraq and its aftermath qualified as such an emergency. See, e.g., Administrative Record ("AR"), 29 (Landis Letter Regarding Overpayment) ("The ongoing response to the September 11 terrorist attacks and the war in Iraq have each been deemed to constitute such an emergency."). In such circumstances, an employee's aggregate pay for a calendar year cannot exceed the greater of "the maximum rate of basic pay payable for GS-15 in effect at the end of such calendar year (including any applicable locality-based comparability payment)" or "the rate payable for level V of the Executive Schedule in effect at the end of such calendar year." 5 U.S.C. § 5547(b)(2).[3]

Plaintiffs initially deployed to Iraq in December 2003. At that time, plaintiffs' pay cap

---

[2] Waiving the biweekly cap permits employees to "work more overtime hours." See Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem.") [Docket Entry 21], at 2 n.3.

[3] According to the Office of Personnel Management, which promulgated regulations interpreting section 5547(b), an agency must use the GS-15 or Executive Schedule level V rate "in effect on the last day of the calendar year" to determine an employee's pay cap. 5 C.F.R. § 550.106(c); see also 69 Fed. Reg. 55,941, at 55,941 (Sept. 17, 2004) ("A geographic move to an area with different pay rates can raise or lower an employee's aggregate basic pay and the end-of-year annual cap on premium pay. In turn, a change in aggregate basic pay or the end-of-year cap can change retroactively the date on which an employee reached the annual premium pay cap.").

was $130,305 -- the sum of the maximum rate of pay for a GS-15, $113,674, and the applicable locality based comparability payment for the District of Columbia. See, e.g., AR at 84 (June 22, 2005 Landis Board of Contract Appeals Decision). Plaintiffs had a District of Columbia pay cap because, although they were deployed in Iraq, they were on temporary duty status, which requires the State Department to apply the District of Columbia pay cap. See, e.g., AR at 340 (July 28, 2008 Landis Foreign Service Grievance Board Decision). In July 2004, the State Department established the new United States Embassy in Baghdad, and plaintiffs were transferred to a permanent duty assignment in Iraq. See id. This transfer reduced plaintiffs' pay cap to $128,200. See id. at 341. This is so because there are no locality based comparability payments available for overseas locations. See June 22, 2005 Landis Board of Contract Appeals Decision at 84. Accordingly, plaintiffs' pay cap was the $128,200 maximum available under level V of the Executive Schedule, which was greater than the $113,674 maximum available for GS-15. See, e.g., id.

Because of this immediately-effective reduction in plaintiffs' annual pay cap, the State Department advised plaintiffs in November 2004 that their "earnings applicable toward the 2004 premium pay cap have already or could shortly put you above the cap for the current pay year." AR at 316 (Nov. 24, 2004 Email to Richard Lubow). The Department also indicated that "[i]f such payments are made erroneously, the Department is obligated to seek collection of such overpayments." Id. In April 2005, the State Department notified plaintiffs that each of them had been overpaid because each had exceeded his pay cap for 2004. See, e.g., AR at 29 (Apr. 27, 2005 Letter to Landis Regarding Overpayment). The Department therefore requested that plaintiffs repay their debt, but indicated that they had "the right to request either an internal

administrative review or a hearing conducted by a non-Department of State official with respect to the existence of the debt, the amount of the debt, or the repayment schedule." Id.

Each plaintiff availed himself of this opportunity. Frank Benevento sought internal review, and Deputy Assistant Secretary of State James Millete concluded that Benevento had been overpaid and therefore owed a valid debt. See FBAR at 25-27 (Aug. 30, 2005 Millete Decision). The remaining plaintiffs, Richard Lubow, Joseph Bopp, David Bennett, and James Landis, sought external review by the General Services Administration's Board of Contract Appeals. In substantively identical decisions, the Board upheld the State Department's determination that plaintiffs had been overpaid. See, e.g., June 22, 2005 Landis Board of Contract Appeals Decision at 89.

Each plaintiff then requested that the State Department waive his indebtedness pursuant to 5 U.S.C. § 5584. See, e.g., AR at 34 (Landis Request for Waiver). That statute permits an agency to waive collection of erroneous payments made to a party, where collection "would be against equity and good conscience and not in the best interest of the United States." 5 U.S.C. § 5584(a). The Department declined to do so. See AR at 404 (Jan. 7, 2010 Opinion of the Foreign Service Grievance Board). The Foreign Service Grievance Board initially overturned a decision by the State Department denying waiver, and remanded the request to the State Department. See id. On remand, the Department once again found waiver inappropriate, and the Board upheld that decision. See id.

Plaintiffs then brought this action. They challenge, as contrary to 5 U.S.C. § 5547 and the Office of Personnel Management's regulations, Deputy Assistant Secretary of State Millete's and the Board of Contract Appeals's decisions that they owed a valid debt. And they contend that the

Foreign Service Grievance Board acted arbitrarily and abused its discretion in denying their requests for a waiver of indebtedness. Before the Court are the parties' cross-motions for summary judgment on these issues.

The Court will not reach plaintiffs' substantive challenges. Where "an intervening event may affect the validity of the agency action at issue, a remand is generally required." Sierra Club v. Van Antwerp, 560 F. Supp. 2d 21, 23 (D.D.C. 2008); accord Ethyl Corp. v. Browner, 989 F.2d 522, 524 (D.C. Cir. 1993); see also Citizens Against the Pellissippi Parkway Extension, Inc. v. Mineta, 375 F.3d 412, 416 (6th Cir. 2004) (it may be "an abuse of discretion to prevent an agency from acting to cure the very legal defects asserted by plaintiffs challenging federal action"); cf. Fl. Power & Light Co. v. Lorian, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Here, there is just such an intervening event.

In 2005, Congress passed the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief of 2005 ("Appropriations Act of 2005"), Pub. L. No. 109-13, 119 Stat. 231 (2005). In section 1008 of the Act, Congress permitted federal agencies to waive section 5547's federal pay cap for certain federal employees during calendar year 2005, up to a maximum of $200,000. See Appropriations Act of 2005, 119 Stat. 231, 243 ("During calendar year 2005 . . . the head of an Executive agency may waive the limitation, up to $200,000, established in [5 U.S.C. § 5547] for total compensation, including limitations on the aggregate of basic pay and premium pay payable in a calendar year . . . ."). Pursuant to the Act,

the State Department waived the "limitation, up to $200,000, on the aggregate of basic pay and premium pay payable in calendar year 2005 for employees working in Iraq and Afghanistan." AR at 184 (Aug. 19, 2005 State Department Cable). And the Department applied this pay cap waiver "to all premium pay earnings payable in calendar year 2005, e.g. for work performed in pay period 25 of 2004 (pay date January 8, 2005)." Id. at 184-85.

By its plain terms, then, the State Department's pay cap waiver applied not just to work done during 2005, but also to work done during pay period 25 of 2004. Yet neither the State Department nor the Board of Contract Appeals considered the effect of this waiver of plaintiffs' purported debts. The Board of Contract Appeals issued its decision confirming the debts of Richard Lubow, Joseph Bopp, David Bennett, and James Landis prior to the State Department's waiver in August 2005. See, e.g., June 22, 2005 Landis Board of Contract Appeals Decision at 84. And although Deputy Assistant Secretary of State Millete issued his decision after the State Department's pay cap waiver took effect, the decision does not discuss the pay cap waiver at all. Perhaps the State Department could conclude that the waiver either affects the fact or the amount of plaintiffs' debts. Perhaps not. But it is not for the Court to conduct "a de novo inquiry into the matter being reviewed and . . . reach its own conclusions based on such an inquiry." Fl. Power & Light Co., 470 U.S. at 744. Rather, because there is no evidence in the record that the State Department considered how the 2005 pay cap waiver affects plaintiffs' debts based on 2004 overpayments, "the proper course . . . is to remand to the agency for additional investigation or explanation." Id.[4]

---

[4] The record does not indicate, for example, whether, notwithstanding the fact that it was covered by the 2005 pay cap waiver, the State Department included plaintiffs' pay period 25 earnings when calculating plaintiffs' 2004 overpayments. Nor does it show how much money

The State Department raises two challenges to plaintiffs' argument that the pay cap waiver requires the Department to recalculate their overpayments. First, it contends that it cannot recompute each plaintiff's entire salary for 2004 pursuant to the waiver because this would be "in direct contravention of the language of the 2005 Premium Pay Cap Waiver as well as Congressional intent in enacting Public Law 109-13." Defs.' Mem. at 25. This may be so, but it is of no moment. Even if the waiver does not apply to all of plaintiffs' 2004 salary, it does apply, by its plain terms, to work performed during pay period 25 of 2004. Hence, the State Department, at the least, must evaluate whether and how the waiver affects any overpayments made to plaintiffs during pay period 25.

Second, the State Department argues that Landis, Bennett, Bopp, and Lubow cannot raise the pay cap waiver issue with this Court. Plaintiffs sought external review of the validity of their debt with the Board of Contract Appeals, but did not seek further administrative review of that decision before the Foreign Service Grievance Board. Nor, according to the State Department, could they. See Defs.' Mem. at 25 (citing 22 U.S.C. § 4139 ("A grievant may not file a grievance with the [Foreign Service Grievance] Board if the grievant has formally requested, prior to filing a grievance, that the matter . . . be considered or resolved and relief be provided under another provision of law, regulation or Executive Order.")). And in the State Department's view, because those plaintiffs could not raise the validity of their debt with the Foreign Service Grievance Board, they "cannot challenge the determination of the proper pay cap here" as part of their challenge to the Foreign Service Grievance Board's decision. Defs.' Reply in Supp. of Cross-

---

plaintiffs' received in pay period 25 that was in excess of the statutory cap. Such information would be necessary for the Court to evaluate the effect of the pay cap waiver on plaintiffs' debts.

Mot. for Summ. J. ("Def.'s Reply") [Docket Entry 25], at 7.

But Landis, Bennett, Bopp, and Lubow also separately challenge the validity of the Board of Contract Appeals decision in this action. And it is undisputed that the Board did not consider the Department's pay cap waiver when adjudicating the validity of plaintiffs' debt. The pay cap waiver was an intervening event that may affect the validity of the Board's decision. This is sufficient to require a remand. See Sierra Club, 560 F. Supp. 2d at 23.[5] As the Court indicated, this does not mean that plaintiffs will prevail on their argument. But that is a decision that this Court cannot make in the first instance. See Fl. Power & Light Co., 470 U.S. at 744.

Therefore, upon consideration of the parties' cross-motions for summary judgment, the parties' several memoranda, and the entire record herein, and for the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' motion is **GRANTED in part**; and it is further

**ORDERED** that the decisions of Deputy Assistant Secretary of State Millete and the Board of Contract Appeals that plaintiffs owe a valid debt are **REMANDED** to the State Department and the Board of Contract Appeals, respectively, for additional consideration in light of the Department's August 2005 waiver of the premium pay cap, which the Department has applied to earnings for work performed in pay period 25 of 2004.

**SO ORDERED**.

---

[5] Although quite opaque, the State Department arguably contends in its reply that Landis, Bennett, Bopp, and Lubow simply cannot bring a separate challenge to the Board of Contract Appeals decision in this action. See Def.'s Reply at 7. But to the extent it makes this argument, it offers no support for it. And, in any event, courts may review "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704. Here, the State Department argues that the Board of Contract Appeals decision was a final agency action. See Def.'s Reply at 7-8.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Date: August 10, 2010